UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| XENICS USA, INC.,<br>            Plaintiff, | )<br>)<br>) |
| | ) |
| v. | ) |
| | ) |
| IMAGING TECH SOLUTIONS, INC.,<br>            Defendant. | )<br>)<br>) |

Civil Action No.:

## COMPLAINT AND JURY DEMAND

Plaintiff Xenics USA, Inc., brings this action against Defendant Imaging Tech Solutions, Inc. for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment.

## PARTIES

1.      Plaintiff Xenics USA, Inc. ("Xenics USA") is a Massachusetts corporation with its principal place of business in Beverley, Essex County, Massachusetts.

2.      Defendant Imaging Tech Solutions, Inc. ("ITS") is a California corporation with its principal place of business in Chula Vista, California.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).  The matter in controversy exceeds $75,000 and is between citizens of different states.

4.      By agreement, ITS consented to venue in this District and to this Court exercising personal jurisdiction over ITS:

a.      The Exclusive Distribution Agreement includes ITS's agreement to "exclusive jurisdiction of the courts sitting in Massachusetts for the resolution of any dispute." (Exhibit 1, Art. 15.)

b.      The Memorandum of Understanding includes ITS's agreement that "any suit, action or other proceeding arising out of, or relating to, this MoU shall be adjudicated in the Commonwealth of Massachusetts.  Each of the Parties hereto irrevocably consents to the jurisdiction of the courts of the Commonwealth of Massachusetts and the United States District Court for the District of Massachusetts … and expressly waives any and all objections they may have to venue in such courts." (Exhibit 2, Art. 8.)

c.      The Non-Exclusive Distribution Agreement includes ITS's agreement that "any dispute arising out of or relating to this Agreement, which cannot be settled amicably, will be finally settled by the competent courts of the State of Massachusetts." (Exhibit 3, Art. 15.)

<u>**Background**</u>

**Agreements Between the Parties**

5.      Xenics USA is the U.S. subsidiary of a multinational business engaged in designing, manufacturing, and selling sophisticated infrared camera equipment ("Xenics").

6.      Xenics's products are generally sold in the United States through a network of independent distributors.  Each distributor has certain rights and responsibilities to promote, sell, and service Xenics products within a particular geographic territory during a defined timeframe.

**Exclusive Distribution Agreement**

7.      On or about February 3, 2015, Xenics USA and ITS executed an Exclusive Distribution Agreement, a copy of which is attached as **Exhibit 1** (the "Exclusive Distribution Agreement").

8.      Under the Exclusive Distribution Agreement, the parties agreed, among other things, as follows:

a.      Xenics USA appoints ITS as its exclusive distributor for promoting, distributing, and selling its products in California, Oregon, Washington, Nevada, Utah, and Idaho (Exhibit 1, Art. 2.1. & Appendix A);

b.      ITS will purchase products from Xenics USA and resell them in ITS's own name (Exhibit 1, Art. 2.4.);

c.      ITS will purchase and take delivery of a minimum of $400,000.00 in Xenics products annually (Exhibit 1, Art. 5.1);

d.      ITS will "[a]ctively and dynamically promote the sale" of Xenics products and "diligently solicit orders in its Territory by finding new customers, contacts and projects" (Exhibit 1, Art. 5.3 (i));

e.      ITS shall "[p]rovide adequate and competent technical assistance to customers" (Exhibit 1, Art. 5.3 (ii));

f.      ITS shall "[m]aintain and utilize an up-to-date mailing list of customers, which shall be made available to" Xenics USA (Exhibit 1, Art. 5.3 (vi));

g.      ITS will provide three-year rolling forecasts each year and four-month rolling forecasts each quarter (Exhibit 1, Art. 5.3 (viii), (ix));

h.      ITS's orders with Xenics USA are "subject to the terms and conditions detailed in [the Exclusive Distribution Agreement], and to [Xenics USA's] General Sales Conditions as amended from time to time … and printed on the reverse of each confirmation of purchase order (Exhibit 1, Art. 4.2.);

i.      ITS shall not distribute any products that directly or indirectly compete with Xenics products (Exhibit 1, Art. 3.1);

j.      Prices set forth between Xenics USA and ITS are applicable for payment within 30 calendar days by ITS.  (Exhibit 1, Art. 9.2.)

k.      The Exclusive Distribution Agreement was valid for one year and automatically renewed for additional one-year periods unless either party provided written notice three months prior to the expiration of a then-current one-year period.  (Exhibit 1, Art. 13.1.) The parties could also terminate if the other party did not remedy failures to perform its obligations within 45 days after receipt of written notice of same.  (Exhibit 1, Art. 13.2.)

9.      During the term of the Exclusive Distribution Agreement, the parties agreed upon revenue forecasts for 2016 of $600,000 and for 2017 of $850,000.  (Exhibit 1, Appendix D.)

10.      ITS failed to meet its agreed upon obligations in the Exclusive Distribution Agreement, including without limitation the revenue levels as agreed in the Exclusive Distribution Agreement.  For example, ITS's revenues were $333,377 in 2016 and $452,920 in 2017.

**The Memorandum of Understanding**

11.      In October of 2018, given ITS's disappointing results in the sale of Xenics products, the parties signed a Memorandum of Understanding (the "MOU"), a copy of which is attached as **Exhibit 2**.

12.      Pursuant to the MOU, which supplemented, but did not supersede, the Exclusive Distribution Agreement, the parties agreed to jointly fund a "Sales Acceleration Project."

13.      The MOU required an ITS salesperson to, at a minimum, provide "bi-monthly reporting to [the] Xenics USA CEO, organize customer meetings, [provide] customer attendance" at Xenics exhibitions in ITS's territory, and "provide information and data points on the business opportunities, competitive situation, overall market headlines and major customer highlights." (Exhibit 2 ¶ 4(1).)

14.     Under the MOU, and in exchange for additional monetary investment by Xenics USA, the parties agreed that ITS would generate the following revenue levels:  $700,000 for 2018, $1,000,000 for 2019, $1,700,000 for 2020, and $2,500,000 for 2021. (Exhibit 2 ¶ 6.)

15.     ITS failed to meet its agreed upon obligations in the MOU, including without limitation the revenue levels as agreed on in the MOU.  For example, ITS's revenues in 2018 were $394,000 and $667,380 in 2019.

**Termination of the Exclusive Distribution Agreement / Execution of the Non-Exclusive Distribution Agreement**

16.     By letter dated October 15, 2019, Xenics terminated the Exclusive Distribution Agreement, effective as of February 2, 2020.

17.     Following Xenics USA's notice of its election to terminate the Exclusive Distribution Agreement, the parties entered into a Non-Exclusive Distribution Agreement, a copy of which is attached as **Exhibit 3** (the "Non-Exclusive Distribution Agreement").  The Non-Exclusive Distribution Agreement was signed by the parties in December 2019 and set to take effect on February 1, 2020.  By its terms, the Non-Exclusive Distribution Agreement was valid for one year and automatically renewed for additional one-year periods unless either party provided written notice three months prior to the expiration of a then-current one-year period. (Exhibit 3, Art. 13.1.)  The parties could also terminate if the other party did not remedy failures to perform its obligations within 45 days after receipt of written notice of same.  (Exhibit 3, Art. 13.2.)

18.     On January 31, 2020, ITS send a communication to Xenics USA stating: "please accept this letter as ITS notification of our cancellation of the Distribution Agreement between ITS and Xenics."

- 5 -

19.     The communication from ITS to Xenics USA on January 31, 2020, manifested ITS's prospective unwillingness to perform under the Non-Exclusive Distribution Agreement and constituted a breach of the Non-Exclusive Distribution Agreement, including, but not limited to, the termination provisions set forth in Article 13.

20.     To the extent the communication from ITS to Xenics USA on January 31, 2020, concerned the Exclusive Distribution Agreement, the communication constituted an anticipatory repudiation coupled with ITS's actual breaches of contract.

**ITS's Breaches of the Parties' Agreements**

21.     ITS has breached the Exclusive Distribution Agreement in several respects, including without limitation the following:

    a.     By failing to pay Xenics over $206,527, plus interest and attorney's fees, owed for products ITS ordered and Xenics delivered;

    b.     By not achieving the revenue requirements in the Exclusive Distribution Agreement and the MOU;

    c.     By including competing products in its product portfolio;

    d.     By failing to actively and dynamically promote the sale of Xenics products in its territory;

    e.     By failing to provide adequate and competent technical assistance to customers;

    f.     By failing to diligently solicit orders for Xenics products within its territory by finding new customers, contacts, and projects;

    g.     By failing to maintain and utilize an up-to-date mailing list of customers made available to Xenics USA;

h.       By failing to provide Xenics with three-year rolling forecasts each year and four-month rolling forecasts each quarter; and

i.       By failing to provide bi-monthly reporting to the Xenics USA CEO, organize customer meetings, provide customer attendance at Xenics exhibitions in ITS's territory, and provide information and data points on the business opportunities, competitive situation, overall market headlines, and major customer highlights.

22.     ITS has also breached the Exclusive Distribution Agreement and/or the Non-Exclusive Distribution Agreement by repudiating each of those contracts, coupled with actual breaches thereof, and/or manifesting its prospective unwillingness to perform on January 31, 2020.

23.     With respect to ITS's failure and refusal to pay the monies due on certain purchase orders, ITS has and continues to refuse to pay Xenics USA $206,527.00 plus interest per the terms of the Exclusive Distribution Agreement.  Specifically, ITS placed the following orders pursuant to the Exclusive Distribution Agreement:

a.       SI1921006 for $26,288.00 to Applied Materials on October 10, 2019.

b.       SI1921013 for $30,210.00 to Applied Materials on October 17, 2019.

c.       SI1921015 for $18,126.00 to Applied Materials on October 23, 2019.

d.       SI 1921114 for $86,910.00 to LMCO on December 21, 2019.

e.       SI1921205 for $43,815.00 to LMCO on December 13, 2019.

f.       SI1921208 for $1,178.00 to Applied Materials on December 18, 2019.

g.       All of the above-listed orders included terms requiring payment by ITS within 30 days with interest accruing thereafter at 1.5% per month.

h.      All of the above-listed orders were pursuant to a term and condition that "[a]ll collection expenses incurred by Xenics (including attorney's fees) shall be reimbursed by the Customer" (here, ITS).

i.      ITS has not paid the Xenics USA invoices for the above-listed orders, either in whole or in part, nor any interest on late payments.

j.      ITS has incurred attorney's fees to collect on these invoices.

24.     Xenics USA is informed and believes, and on that basis alleges, that ITS provided a quotation for Xenics products to Orbotech (now known as Photon Dynamics) on March 10, 2020, which is after both the termination of the Exclusive Distribution Agreement and ITS's repudiation and breach of the Non-Exclusive Distribution Agreement.  Under the terms of both the Exclusive and the Non-Exclusive Distribution Agreements, "[u]pon termination or expiration of this Agreement, the DISTRIBUTOR shall immediately cease using the Trademarks and shall in no way whatsoever pretend to be SUPPLIER'S official distributor of the Product."  (Exhibit 1, Article 14.3; Exhibit 3, Article 14.3.)  The quotation to Orbotech in March 2020 constituted a breach of contract.

25.     The Exclusive Distribution Agreement, the MOU, and the Non-Exclusive Distribution Agreement each contained an implied covenant of good faith and fair dealing which obligated ITS to perform the terms and conditions of the agreement fairly and in good faith, to do everything that each agreement presupposes to accomplish its purpose, and to refrain from doing any act that would prevent or deprive Xenics USA of the benefits of each agreement.  Said covenant of good faith and fair dealing required ITS to fairly, honestly, and reasonably perform the terms and conditions of each agreement, including all express and implied terms.

26.     ITS breached the implied covenant of good faith and fair dealing in, and frustrated Xenics USA's enjoyment of the benefit of, each agreement by, among other things, failing to meet the revenue targets, failing to communicate with Xenics USA, failing to respond to multiple efforts from Xenics USA to discuss the situation with revenue shortfalls, how to rectify it, and how to work together including at a major trade show in ITS's home state, Photonics West. ITS's repudiation of the Non-Exclusive Distribution Agreement, without explanation, and on the eve of Photonics West, evidences ITS's frustration of Xenics USA's ability to benefit from the parties' agreements.

27.     As a direct and proximate result of these breaches of the express and implied terms of the Exclusive Distribution Agreement, the MOU, and the Non-Exclusive Distribution Agreement by ITS, Xenics USA has suffered, and continues to suffer, damages not only in the amount of the unpaid invoices referenced above, but in lost profits and other consequential damages.  Xenics USA also lost significant management time to address ITS's various beaches, deal with unhappy customers, and seek a new distribution outlet for the territory after ITS's abrupt and unexpected repudiation and breach.  Damages are anticipated to continue at least into 2020 due to Xenics USA losing ground in the important territories previously covered by ITS as a result of ITS's breaches.

**Xenics USA's Actions**

28.     As a consequence of ITS breaching its obligations under the Exclusive Distribution Agreement and the MOU, including, but not limited to, ITS's failure to pay for products shipped, Xenics USA refused to ship products for two orders placed by ITS prior to January 31, 2020:  one order in the amount of $21,890.77 order for UC Davis and another order in the amount of $13,690.00 order for Orbotech.

29.     Unable to obtain the products through ITS, UC Davis and Orbotech sought to purchase directly from Xenics/Xenics USA instead.  Xenics/Xenics USA agreed to fill the orders directly to the customers.

30.     Xenics USA is informed and believes, and on that basis alleges, that ITS contends that Xenics/Xenics USA's fulfillment of orders directly to UC Davis and Orbotech prior to the termination of the Exclusive Distribution Agreement constitutes a breach of contract by Xenics USA.

**Controversy Over the "Tail Periods"**

31.     Xenics USA is informed and believes, and on that basis alleges, that ITS contends that it is entitled to a three-month "tail period" of commissions for quotations to customers under the Exclusive Distribution Agreement and/or the Non-Exclusive Distribution Agreement. (Exhibits 1 and 3, Article 14.4.)

32.     ITS does not qualify for a tail period of commissions under the Exclusive Distribution Agreement.  The parties entered into the Non-Exclusive Distribution Agreement which was fully integrated and superseded all terms of the Exclusive Distribution Agreement, including the "tail" in Article 14.4.  (Exhibit 3 Art. 16.4.)

33.     ITS does not qualify for a tail period of commissions under the Non-Exclusive Distribution Agreement.  ITS unilaterally purported to terminate that agreement. Xenics was entitled to treat this "termination" as a breach of contract and/or to consider the contract canceled due to ITS's manifestation of its prospective unwillingness to perform.  ITS may not repudiate a contract or indicate its prospective unwillingness to perform and then rely on certain terms of that same contract to recover against Xenics.

## COUNT I
## BREACH OF EXCLUSIVE DISTRIBUTION AGREEMENT:
## <u>FAILURE TO PAY INVOICES</u>

34.     Xenics USA incorporates by reference each of the foregoing numbered

paragraphs of this Complaint, as well as each of the attached Exhibits.

35.     The Exclusive Distribution Agreement is a valid and enforceable contract.

36.     Plaintiff has performed or substantially performed all conditions, covenants, and

promises required on its part to be performed in accordance with the terms and conditions of the

Exclusive Distribution Agreement.

37.     Defendant has materially breached the terms of the Exclusive Distribution

Agreement by failing to pay invoices in the amount of $206,527.00 plus interest and attorney's

fees.

38.     As a direct and proximate result of Defendant's material breach of the Exclusive

Distribution Agreement, Plaintiff has been damaged.

## COUNT II
## BREACH OF EXCLUSIVE DISTRIBUTION AGREEMENT:
## <u>OTHER TERMS</u>

39.     Xenics USA incorporates by reference each of the foregoing numbered

paragraphs of this Complaint as well as each of the attached Exhibits.

40.     The Exclusive Distribution Agreement is a valid and enforceable contract.

41.     Plaintiff has performed or substantially performed all conditions, covenants, and

promises required on its part to be performed in accordance with the terms and conditions of the

Exclusive Distribution Agreement.

42.     Defendant has materially breached the terms of the Exclusive Distribution

Agreement by:

a.      Failing to achieve the revenue objectives in the Exclusive Distribution Agreement;

b.      Including competing products in its product portfolio;

c.      Failing to actively and dynamically promote the sale of Xenics products in its territory;

d.      Failing to diligently solicit orders for Xenics products within its territory;

e.      Failing to maintain and utilize an up-to-date mailing list of customers made available to Xenics USA;

f.      Failing to provide Xenics with three-year rolling forecasts each year and four-month rolling forecasts each quarter.

43.      As a direct and proximate result of Defendant's material breach of the Exclusive Distribution Agreement, Plaintiff has been damaged.

## COUNT III
## BREACH OF MEMORANDUM OF UNDERSTANDING

44.      Xenics USA incorporates by reference each of the foregoing numbered paragraphs of this Complaint as well as each of the attached Exhibits.

45.      The Memorandum of Understanding is a valid and enforceable contract.

46.      Plaintiff has performed or substantially performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Memorandum of Understanding.

47.      Defendant has materially breached the terms of the Memorandum of Understanding by:

a.      Failing to achieve the revenue objectives within the Memorandum of Understanding;

b.      Failing to provide bi-monthly reporting to the Xenics USA CEO, organize customer meetings, provide customer attendance at Xenics exhibitions in ITS's territory, and provide information and data points on the business opportunities, competitive situation, overall market headlines, and major customer highlights; and

c.      By repudiating the contract on January 31, 2020.

48.      As a direct and proximate result of Defendant's material breach of the Memorandum of Understanding, Plaintiff has been damaged.

## COUNT IV
## BREACH OF NON-EXCLUSIVE DISTRIBUTION AGREEMENT

49.      Xenics USA incorporates by reference each of the foregoing numbered paragraphs of this Complaint as well as each of the attached Exhibits.

50.      The Non-Exclusive Distribution Agreement is a valid and enforceable contract.

51.      Plaintiff has performed or substantially performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Non-Exclusive Distribution Agreement.

52.      Defendant has materially breached the terms of the Non-Exclusive Distribution Agreement by repudiating and breaching the contract, and/or expressing its prospective unwillingness to perform causing Xenics USA to make a material change in its position, on January 31, 2020.

53.      As a direct and proximate result of Defendant's material breach of the Non-Exclusive Distribution Agreement, Plaintiff has been damaged, including, but not limited to, the costs of establishing a new distribution strategy for the former ITS territories and recovering lost ground due to ITS's repudiation and breach.

## COUNT V
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

54.     Plaintiff incorporates by reference each of the foregoing numbered paragraphs of this Complaint as well as each of the attached Exhibits.

55.     Massachusetts law implies a covenant of good faith and fair dealing in all contracts.

56.     Defendant violated the implied covenant of good faith and fair dealing contained in the Exclusive Distribution Agreement, the Memorandum of Understanding, and the Non-Exclusive Distribution Agreement by depriving Plaintiff of the benefit of its bargain under those agreements as set forth above.

57.     As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff has been damaged.

## COUNT VI
## DECLARATORY RELIEF – ORDERS FILLED DIRECTLY

58.     Plaintiff incorporates by reference each of the foregoing numbered paragraphs of this Complaint as well as each of the attached Exhibits.

59.     Plaintiff is informed and believes, and on that basis alleges, that Defendant contends that orders filled directly by Xenics USA to UC Davis and Orbotech prior to January 31, 2020, constituted a breach of the Exclusive Distribution Agreement by Xenics USA.

60.     Plaintiff contends ITS's material breaches prior to the direct sales to UC Davis and Orbotech excused Plaintiff from further performance under the Exclusive Distribution Agreement and its sales to UC Davis and Orbotech prior to January 31, 2020, did not otherwise constitute breaches of contract.

4813-6940-5378

61.     Therefore, an actual controversy has arisen and now exists between Plaintiff and Defendant concerning certain of the parties' rights and duties under the Exclusive Distribution Agreement.

62.     Plaintiff desires a judicial determination that Xenics USA did not breach the Exclusive Distribution Agreement by selling directly to UC Davis and Orbotech.

63.     A judicial declaration is necessary and appropriate under the circumstances so the parties may ascertain their rights and duties under the Exclusive Distribution Agreement. The facts have sufficiently crystallized to permit an intelligent and useful decision to be made, and the issues are fit for a judicial determination.

**COUNT VII**
**DECLARATORY RELIEF – COMMISSION TAIL PERIOD**

64.     Plaintiff incorporates by reference each of the foregoing numbered paragraphs of this Complaint as well as each of the attached Exhibits.

65.     Plaintiff is informed and believes, and on that basis alleges, that ITS contends that it is entitled to a three-month "tail period" of commissions for quotations to customers under Article 14.4 of the Exclusive Distribution Agreement and/or the Non-Exclusive Distribution Agreement.

66.     Plaintiff contends that Defendant does not qualify for commissions for quotations provided to potential customers after January 31, 2020, under the Exclusive Distribution Agreement.  The parties entered into the Non-Exclusive Distribution Agreement which was fully integrated and superseded all terms of the Exclusive Distribution Agreement, including the "tail" in Article 14.4.  (Exhibit 3 Art. 14.4.)  In addition, Defendant repudiated the "Distribution Agreement" on January 31, 2020.

67.     Plaintiff contends that Defendant does not qualify for a tail period of commissions under the Non-Exclusive Distribution Agreement.  Defendant unilaterally purported to terminate that agreement on January 31, 2020.  Plaintiff was entitled to treat the "termination" as an anticipatory breach of contract and/or a manifestation of ITS's prospective unwillingness to perform.  Defendant may not repudiate a contract and then rely on terms of that contract to recover against Plaintiff.

68.     Therefore, an actual controversy has arisen and now exists between Plaintiff and Defendant concerning certain of the parties' rights and duties under the Exclusive Distribution Agreement and the Non-Exclusive Distribution Agreement.

69.     Plaintiff desires a judicial determination that Defendant is not entitled to commission for quotations to customers made after January 31, 2020.

70.     A judicial declaration is necessary and appropriate under the circumstances so the Parties may ascertain their rights and duties under the Exclusive Distribution Agreement and/or the Non-Exclusive Distribution Agreement. The facts have sufficiently crystallized to permit an intelligent and useful decision to be made, and the issues are fit for a judicial determination.

## **RELIEF**

WHEREFORE, Plaintiff Xenics USA, Inc. prays that this Court:

a.     With respect to Count I, enter judgment in favor of Xenics USA and against ITS and grant Xenics USA an award of damages, plus interest, costs, and attorney's fees.

b.     With respect to Count II, enter judgment in favor of Xenics USA and against ITS and grant Xenics USA an award of damages, plus interest, costs, and attorney's fees.

c.      With respect to Count III, enter judgment in favor of Xenics USA and against ITS and grant Xenics USA an award of damages, plus interest, costs, and attorney's fees.

4813-6940-5378

      d.      With respect to Count IV, enter judgment in favor of Xenics USA and against ITS and grant Xenics USA an award of damages, plus interest, costs, and attorney's fees.

      e.      With respect to Count V, enter judgment in favor of Xenics USA and against ITS and grant Xenics USA an award of damages, plus interest, costs, and attorney's fees.

      f.      With respect to Count VI, enter a judgment declaring that  Xenics USA's sales to UC Davis and Orbotech prior to January 31, 2020, did not breach the Exclusive Distribution Agreement;

      g.      With respect to Count VI, enter a judgment declaring that Xenics USA is not obligated to pay ITS commissions on any quotations provided to customers after January 31, 2020;

      h.      For prejudgment interest at the maximum legal rate; and

      i.      For such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff Xenics USA, Inc. requests a jury on all claims so triable.

4813-6940-5378

Respectfully submitted,

XENICS USA, INC.,
By its attorneys,


/s/ Emily C. Shanahan
Emily C. Shanahan (BBO # 643456)
John D. Stuebing (BBO# 483800)
Tarlow, Breed, Hart & Rodgers, P.C.
101 Huntington Avenue, Suite 500
Prudential Center
Boston, MA 02199
Telephone: (617) 218-2000
Facsimile: (617) 261-7673
eshanahan@tbhr-law.com
jstuebing@tbhr-law.com


Of Counsel

Daniel E. Gardenswartz
Deborah A. Yates
Solomon Ward Seidenwurm & Smith LLP
401 B Street, Suite 1200
San Diego, CA  92101
Telephone:  (619) 231-0303
Facsimile:  (619) 615-7934
dgardenswartz@swsslaw.com
dyates@swsslaw.com


Dated:  July 27, 2020

4813-6940-5378